### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA :

                      :

       **v.**                         **Criminal No. 06-037 (EGS)**

                      :

JOHN C. JOHNSON     :

### SENTENCING MEMORANDUM

On June 29, 2006, Mr. John C. Johnson, the defendant, entered a plea of guilty to one count of unlawful maintenance of a premise to manufacture, distribute, store or use a controlled substance.  He will appear before this Honorable Court for sentencing on October 3, 2006.  Through undersigned counsel, Mr. Johnson respectfully submits the following information for the Court's consideration in determining an appropriate sentence.

### Factual Background

Mr. Johnson is a 52-year-old man who has only two prior convictions for minor offenses –- one for driving without a valid permit in 2003, and one for petit larceny almost twenty-eight years ago, in 1978.

Mr. Johnson was born in rural Maryland, where his family lived on a farm as sharecroppers.  He was the youngest of fifteen children.  When he was eighteen, he moved to the District of Columbia and stayed with one of his sisters.

A short time after moving to the District of Columbia, Mr. Johnson obtained a job with the federal government.  He

worked for more than twenty years at the United States Information Agency, and then for almost five years at the Smithsonian Natural History Museum.  In 2000, he became disabled with carpal tunnel syndrome and had several surgeries to repair the damage in his hands.  Unable to work, he began receiving workman compensation payments.

Mr. Johnson was able to maintain his employment over more than twenty-five years, despite a long-term drug addiction.  He has been addicted to heroin since he was 22 years old and crack cocaine since he was 33 years old.

The instant offense arose as a direct result of his drug addiction.  In exchange for crack, Mr. Johnson allowed another man to store a bag containing drugs and guns in his apartment. Mr. Johnson did so only as a means of supporting his drug addiction, and did not participate in the distribution of the drugs.

Since his arrest, Mr. Johnson has been participating in substance abuse treatment at PIDARC.  He is in the methadone treatment program.  Unfortunately, Mr. Johnson's long-term addiction has taken a toll on his health.  He has been diagnosed with Hepatitis C and a swollen liver.  He recently had surgery to remove his gallbladder and surgery for a hernia.  He is currently scheduled to have surgery for problems with his feet.

2

**Argument**

As set forth in the Presentence Investigation Report, the applicable sentencing range under the United States Sentencing Guidelines ("Guidelines") is 46 to 57 months.  Although the Court must consider the Guidelines when determining an appropriate sentence, the Court must do so along with the other factors set forth in 18 U.S.C. § 3553(a).  United States v. Booker, 543 U.S. 220 (2005).  These factors include:  "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense."  18 U.S.C. 3553(a).  Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the
> information concerning the background,
> character, and conduct of a person convicted
> of an offense which a court of the United
> States may receive and consider for the
> purposes of imposing an appropriate sentence.

Following Booker, Courts need not justify sentences outside the applicable Guidelines range by citing an applicable Guidelines grounds for departure or factors that take the case outside the "heartland."  Rather, as long as the sentence imposed is reasonable and supported by the factors outlined in § 3553, the Court may disagree with the range proposed by the Guidelines and

3

exercise discretion to impose a sentence outside the range.

After considering all of the factors set forth in § 3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. at 765 (citing 18 U.S.C. § 3553(a)(2)).  Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation.

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]."  18 U.S.C. § 3553(a) (emphasis added).

## I.    THE GUIDELINES.

In assessing the reasonableness of the sentencing range recommended by the Guidelines, the Court should consider that this recommended range is based on the guidelines for crack cocaine offenses and that the United States Sentencing Commission has disavowed the basis for the disparity between power and crack cocaine guidelines.  The Commission has issued several reports

4

concluding that the disparity is unwarranted.

In February 1995, the Commission issued the first report, Special Report to the Congress: Cocaine and Federal Sentencing Policy (Feb. 1995) ("1995 Report"). The Report repudiated the still-existing crack sentencing structure. The 1995 Report is a comprehensive study which analyzes and considers the appropriate level of punishment to be imposed for crack offenses by the very agency charged by Congress to make sentencing determinations and recommendations. See 28 U.S.C. § 994. The report analyzes each factor perceived to be relevant to the distinction between crack and powder cocaine. Many of the factors were found to provide no support for a higher penalty for crack. Of "[t]he factors that suggest a difference between the two forms of cocaine," however, the Report concludes that they "do not approach the level of a 100-to-1 quantity ratio." 1995 Report at xiv. The 1995 Report concludes that the 100:1 ratio should be eliminated and replaced with specific sentence enhancements more closely tailored to the supportable harm associated with some crack cocaine offenses. The Commission, shortly after issuing the 1995 report, proposed a guideline that would have equalized the amounts of crack and powder under the guidelines. Congress voted to disapprove this amendment, but directed the Commission to further study the matter.

In April 1997, the Commission issued its second report,

Special Report to the Congress: Cocaine and Federal Sentencing Policy (April 1997) ("1997 Report").  This 1997 Report also concluded that the crack/powder sentencing disparity was unwarranted.  The Commission unanimously reiterated its original core finding that, although research and public policy may support somewhat higher penalties for crack cocaine than for powder cocaine, a 100-to-1 quantity ratio simply "cannot be justified."  Id. at 2.  In coming to this conclusion, the Commission balanced the conflicting goals of congressional and public concern about the harms associated with both forms of cocaine - including the potential violence associated with its distribution in some cases, its use by juveniles, the involvement of juveniles in its distribution, and it addictive potential. See id. at 9.  The Commission again recommended that Congress revise the federal statutory scheme for crack and powder cocaine offenses because hundreds of people continue to be sentenced under an unfair law.  See id. at 8-9.

In 2002, the Sentencing Commission issued a new Report to the Congress: Cocaine and Federal Sentencing Policy (May 2002) ("2002 Report").  In it, the "Commission again unanimously and firmly concludes that the various Congressional objectives can be achieved more effectively by decreasing substantially the 100-to-1 drug quantity ratio."  Id. at viii.  In reaching this conclusion, the Commission debunked a number of myths upon which

6

the original disparity was apparently based.  The Commission made
four main findings.  First, it found the current penalties
exaggerate the relative harmfulness of crack cocaine.  Second,
the current penalties sweep too broadly and apply most often to
lower level offenders.  Third, the current quantity-based drug
sentencing system overstates the seriousness of most crack
offenses and fails to provide adequate proportionality.  Fourth,
the Commission concluded that the severity of the current
penalties mostly impacts minorities.  Id. at v-viii.

More recently, in its report, Fifteen Years of Guidelines
Sentencing: An Assessment of How Well the Federal Criminal
Justice System is Achieving the Goals of Sentencing Reform
(November 2004) ("Assessment"), the Commission again criticized
the harsher penalties for crack.  The Assessment again noted the
stark racial impact of this disparity:

> In 2002, 81 percent of the offenders
> sentenced for trafficking the crack form of
> cocaine were African-American.  The average
> length of imprisonment of crack cocaine was
> 119 months, compared to 78 months for the
> powder form of the drug.  Average sentences
> for crack cocaine were 25 months longer than
> for methamphetamine and 81 months longer than
> for heroin.

Id. at 131 (footnotes omitted).

The Assessment further noted that:

> The Commission has previously reported
> that the harms associated with crack cocaine
> do not justify its substantially harsher
> treatment compared to powder cocaine.

> For these and other reasons, the Commission has repeatedly recommended that the quantity thresholds for crack cocaine be revised upward.  In 2001 (USSC, 2001) the Commission recommended that the crack threshold be raised to at least 25 grams from 5 grams, replacing the current 100-to-1 ratio with a 20-to-1 ratio.

Id. at 132.  The Assessment concluded that:

> As shown in Figure 4.10, this one change to current sentencing law would reduce the gap in average prison sentences between Black and White offenders by 9.2 months.  Among drug trafficking offenders only, the current gap is even wider -- 92.1 months for Blacks compared to 57.9 months for Whites -- and the reduction would be even greater, 17.8 months. This one sentencing rule contributes more to the differences in average sentences between African-American and White offenders than any possible effect of discrimination.  Revising the crack cocaine thresholds would better reduce the gap than any other single policy change, and it would dramatically improve the fairness of the federal sentencing system.

Id. (emphasis added).

A number of district courts have analyzed at length the crack/powder disparity in light of Booker, and have correctly determined that a sentence below the advisory guidelines range is warranted in light of the Commission's repeated findings that the disparity is unwarranted.  See, e.g., United States v. Perry, 389 F.Supp.2d 278, 304, 307 (D. R.I. 2005) ("when a guidelines sentence involves a nearly impossible-to-justify disparity such as this, the sentence neither reflects the seriousness of the offense, nor promotes general respect for the criminal justice

8

system," and to "blindly apply" the crack guidelines range "would be to disregard the Supreme Court's directive in <u>Booker</u>/<u>Fanfan</u> to fashion a reasonable sentence"); <u>Simon v. United States</u>, 361 F.Supp.2d 35 (E.D. N.Y. 2005); <u>United States v. Smith</u>, 359 F.Supp.2d 771 (E.D. Wis. 2005)("adherence to the [crack] guidelines would result in a sentence greater than necessary and would also create unwarranted disparity between defendants convicted of possessing powder cocaine and defendants convicted of possessing crack cocaine"); <u>United States v. Harris</u>, 2005 U.S. Dist. Lexis 3958 (D. D.C. 2005)(Judge Robertson); <u>United States v. Clay</u>, 2005 WL 1076243 (E.D. Tenn. 2005).

Two courts of appeals have held after <u>Booker</u> that district courts may not categorically sentence below the advisory guidelines range on the basis of the crack/powder disparity. <u>United States v. Eura</u>, 440 F.3d 625 (4th Cir. 2006), and <u>United States v. Pho</u>, 433 F.3d 53 (1st Cir. 2006).[1] The reasoning of both of these cases is inconsistent with <u>Booker</u>.

The court in <u>Eura</u> focused almost exclusively on § 3553(a)(6), in finding that "giving a sentencing court the authority to sentence a defendant based on its view of an

---

[1] Two other courts of appeals have held that a district court is not <u>required</u> to sentence below the advisory guidelines range because of the crack/powder disparity, but did not reach the issue of whether a district court <u>may</u> do so. <u>United States v. Cawthorn</u>, 429 F.3d 793, 802-03 (8th Cir. 2005), and <u>United States v. Gipson</u>, 425 F.3d 335 (7th Cir. 2005).

appropriate ratio between crack and powder cocaine would
inevitably result in an unwarranted disparity between similarly
situated defendants in direct contradiction to the specific
mandate of 18 U.S.C. § 3553(a)(6)."  440 F.3d at 633.  The <u>Eura</u>
court stated that "sentencing courts should not be in the
business of making legislative judgments concerning crack and
powder cocaine."  <u>Id</u>.  The court also claimed that:

> Moreover, allowing sentencing courts to
> subvert Congress' clearly expressed will
> certainly does not promote respect for the
> law, provide just punishment for the offense
> of conviction, or result in a sentence
> reflective of the offense's seriousness as
> deemed by Congress.

<u>Id</u>.  The Court concluded that the "Sentencing Commission's
recommendations to narrow the 100:1 ratio . . . cannot be used as
a basis to vary from the advisory sentencing range."  <u>Id</u>. at 634.
The court in <u>Eura</u> did allow, though, that some crack cases might
warrant a sentence below the advisory guidelines, but the
"sentencing court must identify the individual aspects of the
defendant's case that fit within the factors listed in 18 U.S.C.
§ 3553(a)."  Id. (emphasis in original).

    The court in <u>Pho</u> likewise claimed that the 100:1 ratio was a
"policy judgment, pure and simple," and that "the district
court's categorical rejection of the 100:1 ratio impermissibly
usurps Congress's judgment about the proper sentencing policy for
cocaine offenses."  433 F.3d at 62-63.  The court claimed that

"Congress intended that particular disparity to exist, and federal courts are not free to second-guess that type of decision."  Id. at 64.

Pho and Eura are wrongly decided for a number of reasons. First, their reasoning is contrary to Booker.  In focusing almost exclusively on supposed disparity that would result, the courts essentially ignored the other § 3553(a) factors, which Booker directs also be taken into account.  The Sentencing Commission itself has found that the crack guidelines are "greater than necessary," that they overstate "the seriousness of the offense," and that they are more severe than necessary to "provide just punishment."  It is difficult to understand how it "promotes respect for the law" to sentence in accord with a discredited and disavowed guideline that creates unwarranted disparity, when, according to the Commission, correcting this disparity "would dramatically improve the fairness of the federal sentencing system."  Indeed, Pho and Eura essentially ignore the prefatory command of § 3553(a) that each and every sentence imposed must be "sufficient, but not greater than necessary," to meet the statutory requirements.

Second, the reasoning of Pho and Eura ignores the very nature of sentencing under the advisory guidelines pursuant to § 3553(a).  Judges are required to consider the guideline range, along with the other statutory factors, and they must give

reasons for the sentences they impose based on those factors.
Thus, judges are not free to "select any ratio" they want or
impose any sentence they want.  If a judge does look to a
different crack/powder ratio than the 100:1 ratio, the judge will
need to give reasons for selecting that ratio, and those reasons
will be reviewed under a deferential standard for
"reasonableness."  While it is true that other judges may decide
that another ratio more accurately reflects the seriousness of
the offense in other particular cases, their basis for
considering another ratio will also be subject to review for
reasonableness, and thus judges cannot simply select whatever
ratio they wish.

Third, <u>Pho</u> and <u>Eura</u> ignore the fact that requiring judges to
sentence based on the 100:1 ratio, while giving the illusion of
promoting uniformity, would in fact just lock in a different sort
of disparity - - the very serious disparity between sentences for
crack and powder cases that the Sentencing Commission has found
is unwarranted.  This hardly comports with the need for courts to
"determine, and to base punishment upon, the real conduct that
underlies the crime of conviction." <u>Booker</u>, 543 U.S. at 250
(emphasis added).  The advisory guideline system gives judges the
ability to avoid this unwarranted disparity on a case-by-case
basis.

Fourth, the concern about discrepancies near the mandatory

12

minimum threshold was a problem even before Booker.  For
instance, a defendant could sell 499 grams of powder cocaine in
5.1 gram packets to 98 individuals, who each might sell all 5.1
grams, after converting it to crack,[2] to one person.  The person
who sold to 98 others, and made an exponentially larger amount of
money, would be subject to no mandatory minimum, while the 98
people making one sale each would be subject to one.  Thus, while
Pho and Eura are persuasive arguments against the folly of
mandatory minimums, they do not accord with Booker.  Indeed, the
Court in Booker specifically recognized that the decision would
not "provide the uniformity that Congress originally sought to
secure."  Id. at 766-67.

    Fifth, the decisions in Pho and Eura prove too much.
Ultimately, their reasoning is simply an argument for re-
instituting the mandatory nature of the guidelines.   In effect,
they find that because the mandatory minimum drug penalties are
binding, the guidelines must be treated as equally binding in
order to avoid sentencing disparities that could otherwise arise.
But the solution to this potential for disparity, if indeed it is
a problem that needs to be addressed, is not to violate Booker
and the Sixth Amendment.  The holdings of Pho and Eura - - to
make compliance with the guidelines effectively mandatory but

------------------------------------------------------------

    [2] This is a very simple process.  See United States v.
Brisbane, 367 F.3d 910, 911-12 (D.C. Cir. 2004).

without the constitutional protections <u>Booker</u> requires  - - directly conflict with <u>Booker</u>.

Sixth, the underlying premise of <u>Eura</u> and <u>Pho</u> - - that the 100:1 ratio reflects some kind of carefully considered Congressional judgment - - is incorrect.  The Commission found that "there is no authoritative legislative history that explains Congress's rationale for selecting the 100 to 1 drug quantity ratio for powder cocaine and crack cocaine offenses."  2002 Report at 7.  The statute was passed "without such normal deliberative processes as committee hearings and reports." <u>Brisbane</u>, 367 F.3d at 912.  And Congress itself has subsequently stated that the 100:1 ratio may not be warranted.

Under <u>Booker</u>, the Court should take into account the Sentencing Commission's repeated disavowals of the crack/powder disparity.  It is perverse indeed to believe that it "promotes respect for the law" to sentence in accord with guidelines that the Commission has thoroughly discredited.

As noted above, several Judges of this Court, consistent with <u>Booker</u> and the above discussion, have imposed sentences below the recommended guidelines because of the unwarranted disparity between crack and powder cocaine.  <u>See</u> <u>United States v. Harris</u>, 2005 U.S. Dist. Lexis 3958 (D.D.C. 2005).  In addition to Judge James Robertson's decision in <u>Harris</u>, Judge Richard W. Roberts has sentenced defendants convicted of a crack related

14

offense based on the powder cocaine guidelines.
Judge Paul L. Friedman has sentenced several defendants based on
a 20:1 ratio.

In Harris, Judge Robertson addressed the fundamental
unfairness of the powder/crack sentencing disparity.  The Harris
case involved two small-time dealers of crack cocaine.
Judge Robertson noted the "astonishingly high ratio" of cocaine
powder to cocaine base for the same sentence, and declined to
impose a guideline sentence.  In doing so, the Court adopted the
Sentencing Commission's findings from its 2002 Report to the
Congress: Cocaine and Federal Sentencing Policy:  (1) "that the
Guidelines ranges for crack exaggerate the relative harmfulness
of crack cocaine (in terms of addictiveness, prenatal cocaine
exposure, use of crack by youth, and the feared epidemic of crack
users);" (2) "that the Guidelines ranges sweep too broadly and
apply most often to lower level offenders;" (3) "that the
Guidelines ranges overstate the seriousness of most crack cocaine
offenses and fail to provide adequate proportionality (weapons,
violence, and minor co-participants are involved in smaller
numbers than previously imagined);" and (4) "that the severity of
the Guidelines ranges for crack mostly impacts minorities."  Id.
at *9.  Judge Robertson concluded that "[t]hose findings are
persuasive authority for the proposition that the sentencing
ranges prescribed ... by the Guidelines are greater than

necessary." Id. A similar finding is appropriate here.

It is important to note that reducing Mr. Johnson's sentence here for the unwarranted disparity in crack/powder sentencing is not a "departure" from the guidelines, whatever that term may mean in an advisory system. The guidelines are, under Booker, only one factor among several to be considered in imposing a sentence. Attempting to remedy the unwarranted disparity well serves the statutory command to "impose a sentence sufficient, but not greater than necessary" to "promote respect for the law," to "provide just punishment," to "reflect the seriousness of the offense," to account for "the nature and circumstances of the offense," and to "avoid unwarranted sentence disparities."

Mr. Johnson is not the "serious or high-level trafficker" that should receive a high sentence such as that suggested by the Guidelines – in fact, Mr. Johnson was not a drug dealer. As the Commission recognized:

> Powder cocaine is easily converted into crack cocaine through a simple process involving baking soda and a kitchen stove. Conversion usually is done at the lowest levels of the drug distribution system. Large percentages of the persons subject to five-and ten-year penalties under the current rules do not fit the category of serious or high-level trafficker that Congress described when initially establishing the five-and ten-year penalty levels.

Assessment at 132. Mr. Johnson certainly does not fall into the category of individuals for whom the higher crack cocaine

penalties were intended.

The Sentencing Commission has stated that sentences for crack offenders more equivalent to those for powder offenses would "dramatically improve the fairness of the federal sentencing system."  This Court can accomplish this by imposing a sentence within the range established for an equivalent amount of powder cocaine.  If Mr. Johnson's Guidelines are calculated using the powder cocaine guidelines, the appropriate sentencing range would be 0 to 6 months, based on a criminal history category I and offense level 8 (base offense level 16, minus 2 levels for the safety valve, minus 4 levels for not participating in the underlying offense, minus 2 levels for acceptance of responsibility).

## II.  OTHER § 3553 FACTORS.

A review of the other factors set forth in § 3553 also demonstrates that a sentence significantly below the range suggested by the crack cocaine Guidelines is appropriate.  First, when considering the nature and circumstances of the offense, the Court should consider Mr. Johnson's limited involvement in the offense and why he was involved.  Mr. Johnson made his apartment available for a drug dealer to store drugs in order to support his own addiction.

When considering the history and characteristics of Mr. Johnson, the Court should consider that Mr. Johnson is 52

17

years old and this is his first felony conviction, that his only recent prior conviction was for a traffic offense (driving without a permit), and that his only other prior conviction was for petit larceny almost twenty-eight years ago. Mr. Johnson held a job with the federal government for twenty-five years and helped raise two daughters. Most recently, Mr. Johnson has made significant efforts to control his drug addiction. He has been participating in the PIDARC methadone treatment program since just after his arrest in this case. Incarcerating Mr. Johnson at this point would have a negative effect on the progress he has made with regard to controlling his addiction and also could have a detrimental effect on his deteriorating health.

Finally, the Court must consider the kinds of sentences available and must not impose a sentence that is greater than necessary to comply with the purposes of sentencing set forth in § 3553 (reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide the defendant with needed educational or vocational training and medical care). Here, any sentence of incarceration would be greater than necessary to comply with these purposes. As an alternative to incarceration, the Court could impose a sentencing involving a form of community confinement, such as electronic monitoring, that would effectively punish Mr. Johnson, provide for

deterrence, protect the public, and reflect the seriousness of the offense.

Conclusion

For the foregoing reasons and such other reasons as may be presented at the sentencing hearing in this matter, Mr. Johnson respectfully requests that the Court impose a sentence of supervised release with a period of community confinement.

Respectfully submitted,

/s/
_____
Mary Manning Petras
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202)208-7500