**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:06-cr-37-EGS** |
| | ) | |
| **JOHN C. JOHNSON** | ) | |

Government's Supplemental Memorandum In Aid Of Sentencing

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this supplemental memorandum in aid of the sentencing of defendant John C. Johnson.

Background

Defendant Johnson is to be sentenced on January 17, 2007, following his guilty plea to a single count of maintaining premises to manufacture, distribute, store and use crack cocaine, in violation of 21 U.S.C. § 856(a)(2). Defendant Johnson, who pled guilty on June 29, 2006, was originally scheduled to be sentenced on October 3, 2006. On September 29, 2006, the defendant filed a sentencing memorandum arguing that the sentencing range recommended by the United States Sentencing Guidelines in this case, 46 to 57 months in prison, was unreasonable due to the disparity in the Guidelines between crack-related offenses and cocaine powder offenses. According to the defendant's memo, the same quantity of cocaine powder would result in a Guidelines sentencing range of zero to 6 months in prison. On October 3, 2006, the government requested an

opportunity to respond to this argument in writing, which the

Court granted.

Argument

1.    The Sentencing Guidelines, While No Longer Binding, Are
      Entitled to Deference.

In United States v. Booker, 543 U.S. 220 (2005), the Supreme

Court held that certain applications of the United States

Sentencing Guidelines violated the Sixth Amendment.  As a remedy,

the Court invalidated the statutory provision that made the

Guidelines mandatory, 18 U.S.C. § 3553(b)(1), rendering the

Guidelines "effectively advisory."  Booker, 534 U.S. at 245.  The

Court made clear, however, that a sentencing court must still

"consult [the] Guidelines and take them into account when

sentencing."  Id. at 224 (citing 18 U.S.C. § 3553(a)(4)).[1]

    Moreover, a court cannot satisfy its duty to take the

Guidelines into account simply "by a general reference to the

entirety of the Guidelines Manual, followed by a decision to

impose a 'non-Guidelines sentence.'"  United States v. Crosby,

397 F.3d 103, 111 (2d Cir. 2005) (decided post-Booker).  Instead,

---

[1]The cited U.S. Code provision states in pertinent part:

> The court, in determining the particular
> sentence to be imposed, shall consider-- . .
> . (4) the kinds of sentence and the
> sentencing range established for . . . the
> applicable category of offense committed by
> the applicable category of defendant as set
> forth in the guidelines . . . .

2

a sentencing court must first determine the applicable Guidelines

sentence, including any permissible departures, and then, after

considering the Guidelines and all other factors in 18 U.S.C. §

3553(a),[2] decide whether to apply the Guidelines sentence or a

non-Guidelines sentence.  Crosby, 397 F.3d at 111, 113; accord

United States v. Doe, 412 F. Supp. 2d 87, 90 (D.D.C. 2006)

(opinion of J. Bates); United States v. Edwards, 427 F. Supp. 2d

17, 27 (D.D.C. 2006) (opinion of J. Bates), affirmed per curiam,

2006 WL 2828867 (D.C. Cir., Sept. 20, 2006) (unpublished).  If

the court decides not to apply the Guidelines sentence, it must

explain on the record its rationale to deviate from the advisory

scheme of the Guidelines.  18 U.S.C. § 3553(c)(2).

    Thus, the importance of the Guidelines in fashioning

sentences was not eviscerated by Booker.  In fact, absent highly

unusual circumstances, the sentence in a federal criminal case

should fall within the applicable Guidelines range, or be

justified as a Guidelines-sanctioned departure from that range.

---

    [2]The other factors are:  the nature and circumstances of the
offense and the history and characteristics of the defendant; the
need for the sentence imposed to (1) reflect the seriousness of
the offense, (2) promote respect for the law, (3) provide just
punishment, (4) afford adequate deterrence, (5) protect the
public from further crimes by the defendant, (6) provide the
defendant with needed educational or vocational training, medical
care, or other correctional treatment in the most effective
manner; the kinds of sentences available; any pertinent policy
statement issued by the U.S. Sentencing Commission; the need to
avoid unwarranted sentence disparities; and the need to provide
restitution.  18 U.S.C. § 3553(a)(1)-(3), (5)-(7).

To do otherwise creates the risk that federal sentencing
practices will revert back to the largely unfettered system that,
prior to the 1984 enactment of the Sentencing Reform Act (which
authorized the Sentencing Commission and the issuance of the
first Sentencing Guidelines in 1987), had led to widespread
disparity and uncertainty in punishment among defendants with
similar criminal histories who were convicted of similar crimes.
See Crosby, 397 F.3d at 113-14 ("[I]t would be a mistake to think
that, after Booker . . . , district judges may return to the
sentencing regime that existed before 1987 and exercise
unfettered discretion to select any sentence within the
applicable statutory maximum and minimum.").  Indeed, the
Sentencing Reform Act was enacted specifically to reduce such
disparities, see Mistretta v. United States, 488 U.S. 361, 363-64
(1989), and the creation of the Sentencing Commission, with its
mandate to promulgate sentencing guidelines, was to implement
that goal, see United States v. Williams, 299 U.S. App. D.C. 20,
24, 980 F.2d 1463, 1467 (1992).  All the opinions in Booker
recognize that it is the Sentencing Guidelines that carry out the
express congressional will that, to the extent possible,
sentences be uniform across the country and be based on the
offender's conduct and criminal history.  See Booker, 543 U.S. at
253 (majority opinion); id. at 292 (Stevens, J., dissenting); id.
at 303-04 (Scalia, J., dissenting).

Although Booker holds that such uniformity cannot be achieved through mandatory Sentencing Guidelines, because reducing unjustified disparities was the underlying purpose in promulgating the Guidelines, the Guidelines are entitled to substantial deference.  Many courts to consider the issue of the weight to be afforded the Guidelines, after Booker, have agreed, albeit using a variety of terms, and have further held that a Guidelines sentence is presumptively reasonable.  See United States v. Corrall-Alvarez, 381 F. Supp. 2d 1286, 1293 (D.N.M. 2005) (holding that the court will give "heavy weight" to the Guidelines); United States v. Harper, 360 F. Supp. 2d 833, 834 (E.D. Tex. 2005) (using the phrase "substantial weight"), vacated on other grounds, 448 F.3d 732 (5th Cir. 2006), cert. denied, 2006 WL 2187946 (S. Ct., Oct. 2, 2006); United States v. Peach, 356 F. Supp. 2d 1018, 1021 (D.N.D. 2005) (holding that Guidelines are still entitled to "substantial weight" and that the applicable Guidelines range is presumptively reasonable); United States v. Wanning, 354 F. Supp. 2d 1056, 1060-62 (D. Neb. 2005) (same);  United States v. Wilson, 350 F. Supp. 2d 910, 914 (D. Utah 2005) (Wilson I) (holding that court will give heavy weight to the Guidelines); see also United States v. Jimenez-Beltre, 440 F.3d 514, 516-18 (1st Cir. 2006) (en banc) (while declining to hold that a Guidelines sentence is presumptively reasonable, upholding district court ruling that Guidelines are entitled to

"substantial weight"); <u>United States v. Phelps</u>, 366 F. Supp. 2d

580, 588-89 (E.D. Tenn. 2005) (holding that Guidelines are

entitled to "some degree of enhanced weight").[3]

     While some courts have held otherwise, <u>see</u>, <u>e.g.</u>, <u>United

States v. Zavala</u>, 443 F.3d 1165, 1171 (9th Cir. 2006); <u>United

States v. Ranum</u>, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005),

that view is misguided.  As Judge Cassell, in the <u>Wilson I</u>

opinion, noted:

> It would be startling to discover that while
> Congress had created an expert agency,
> approved the agency's members, directed the
> agency to promulgate the Guidelines, allowed
> those Guidelines to go into effect, and
> adjusted those Guidelines over a period of
> fifteen years, that the resulting Guidelines
> did not well serve the underlying

---

[3]Furthermore, with respect to post-<u>Booker</u> appellate review
of sentences, the courts of appeals have overwhelmingly held that
when a district court imposes a properly calculated Guidelines
sentence, that sentence is presumptively reasonable.  <u>See</u> <u>United
States v. Kristl</u>, 437 F.3d 1050, 1054 (10th Cir. 2006); <u>United
States v. Green</u>, 436 F.3d 449, 457 (4th Cir.), <u>cert. denied</u>, 120
S. Ct. 2309 (2006); <u>United States v. Williams</u>, 436 F.3d 706, 708
(6th Cir. 2006); <u>United States v. Alonzo</u>, 435 F.3d 551, 554 (5th
Cir. 2006); <u>United States v. Mykytiuk</u>, 415 F.3d 606, 608 (7th
Cir. 2005); <u>United States v. Lincoln</u>, 413 F.3d 716, 717 (8th
Cir.), <u>cert. denied</u>, 126 S. Ct. 840 (2005); <u>see also</u> <u>United
States v. Talley</u>, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam)
(holding that, "ordinarily, we would expect a sentence within the
Guidelines range to be reasonable").  <u>But see</u> <u>United States v.
Fernandez</u>, 443 F.3d 19, 27 (2d Cir. 2006) ("We therefore decline
to establish any presumption . . . that a Guidelines sentence is
reasonable."); <u>Jimenez-Beltre</u>, 440 F.3d at 516-18 (holding that
it is not helpful to talk about the Guidelines as "'presumptively
controlling or a Guidelines sentence as "per se reasonable," but
affirming district court's determination that the Guidelines are
entitled to substantial weight).

> congressional purposes.  The more likely
> conclusion is that the Guidelines reflect
> precisely what Congress believes is the
> punishment that will achieve its purposes in
> passing criminal statues.

350 F. Supp. 2d at 915.  Significantly, Wilson I was decided on the very day after the Booker decision, and the defendant filed a motion to reconsider.  United States v. Wilson, 355 F. Supp. 2d 1269, 1270-71 (D. Utah 2005) (Wilson II).  In the intervening weeks, Ranum had been decided.  Judge Casell, however, rejected the reasoning in Ranum and adhered to his ruling that the Guidelines be given "great weight," notwithstanding Booker.  Id. at 1275.  In denying the motion to reconsider, Judge Cassell held that "[o]nly close adherence to the Guidelines offers any prospect of treating similarly situated offenders equally."  Id.

    2.   A Sentence Below The Applicable Guidelines Range,
           Imposed Due To The Disparity In The Guidelines Between
           Sentences For Cocaine Powder And Crack Cocaine, Would
           Be Unreasonable.

If a sentence as computed by the Guidelines is entitled to substantial deference, than a sentence that ignores the cocaine powder / crack sentencing ratio set forth in the Guidelines--not for any reason specific to a particular defendant but because of a court's disagreement on policy grounds with the ratio--is unreasonable and an abuse of discretion.

        A.   It Would Be Unreasonable To Apply A Crack Cocaine
              Sentencing Scheme In Conflict With Congressional
              Intent.

The federal drug statutes and the corresponding sentencing
guidelines reflect a congressional policy choice that trafficking
in crack cocaine should be punished more severely than
trafficking in powder cocaine.  See United States v. Anderson,
317 U.S. App. D.C. 192, 193-94, 82 F.3d 436, 437-38 (1996).  Even
if the Sentencing Commission, through its various reports to
Congress, believes that the crack sentencing policy is
unjustified, Congress has not enacted several proposals to reduce
the sentencing differential, and it has emphatically rejected the
idea that sentences for crack offenses should be the same as
sentences for cocaine powder offenses.  See id.

It is beyond debate that the ultimate authority to decide
the severity of cocaine sentences rests exclusively with
Congress.  See United States v. Evans, 333 U.S. 483, 486 (1948).
And the federal drug statutes establish a sentencing scheme
whereby trafficking in 5 kilograms (5000 grams) of cocaine powder
or 50 grams of cocaine base (i.e., crack), and 500 grams of
cocaine powder or 5 grams of crack cocaine, command the same
statutory minimum and maximum sentences.  21 U.S.C. § 841(b).
This 100-to-1 ratio is, of course, reflected in the Sentencing
Guidelines, which assign equal base offense levels for 150
kilograms of cocaine powder and 1.5 kilograms of crack, 50
kilograms (50,000 grams) of cocaine powder and 500 grams of
crack, and so on.  See U.S.S.G. § 2D1.1©.

Because the Sentencing Guidelines reflect the congressional policy it would be unreasonable for this Court to impose a sentence for a crack offense below the Guidelines range simply because the Court disagrees with this policy.  See United States v. Perkins, 108 F.3d 512, 515 (4th Cir. 1997) (holding that a district court is not free to substitute its "own sense of justice" for the congressional policy choices reflected in the Guidelines).  This proper deference to Congress was repeatedly reflected in the pre-Booker era when the Court of Appeals turned back repeated challenges to the policy.  See, e.g., United States v. Holton, 325 U.S. App. D.C. 360, 372, 116 F.3d 1536, 1548 (1997) (denying challenge based on equal protection grounds); United States v. Edwards, 321 U.S. App. D.C. 201, 205, 98 F.3d 1364, 1368 (1996) (rejecting argument that disparity constitutes a bill of attainder); United States v. Walls, 315 U.S. App. D.C. 111, 116-19, 70 F.3d 1323, 1328-31 (1995) (rejecting "sentencing entrapment" argument and Eighth Amendment challenge); United States v. Cyrus, 281 U.S. App. D.C. 440, 443, 890 F.2d 1245, 1248 (1989) (rejecting due process argument).  The same type of deference was shown when the Court of Appeals, again prior to Booker, also rejected the argument that a downward departure for crack offenses was appropriate in light of the sentencing disparity.  United States v. Thompson, 307 U.S. App. D.C. 221, 228-29, 27 F.3d 671, 678-79 (1994).

Even though the Guidelines are only advisory after <u>Booker</u>, a
federal sentence must still satisfy the standard of
reasonableness.  <u>Booker</u>, 543 U.S. at 261-62.  And regardless of
length, a sentence based on an error of law is per se
unreasonable.  <u>See</u> <u>United States v. Price</u>, 366 U.S. App. D.C.
166, 173, 409 F.3d 436, 442 (2005).  Accordingly, a sentence that
rejects the 100:1 sentencing ratio established by Congress for
crack and cocaine powder offenses, because of a disagreement with
that policy, would be an unreasonable sentence.

B.     <u>Imposing Non-guidelines Sentences To The Entire</u>
       <u>Category Of Crack Cocaine Trafficking Offenses</u>
       <u>Would Cause Unwarranted Sentencing Disparities.</u>

Ignoring the congressional policy would also contradict 18
U.S.C. § 3553, which requires courts to "consider . . . the need
to avoid unwarranted sentence disparities among defendants with
similar records who have been found guilty of similar conduct."
18 U.S.C. § 3553(a)(6).  If this Court were to treat crack
cocaine and powder cocaine offenses identically, then crack
offenders sentenced by the Court would have disparately low
sentences compared to similarly situated crack offenders who were
sentenced by judges who agree with the congressional policy.  As
the Court of Appeals held in <u>Anderson</u>, where it rejected the
disparity as being grounds for a downward departure for crack
offenders:

> Acceptance of appellants' argument would
> logically allow every sentencing district
> judge to select his or her personal crack-
> cocaine ratio, at any level between 100:1 (by
> denying departure) and 1:1.  It is hard to
> imagine a more flagrant violation of the
> Guidelines' purpose to avoid unwarranted
> sentencing disparities among defendants with
> similar records who have been found guilty of
> similar conduct.

317 U.S. App. D.C. at 196, 82 F.3d at 440 (internal quotation

marks omitted).

Ignoring the statutory and Guidelines ratio would also

create disparities between those crack offenders who face a

mandatory minimum and those who do not.  As the Court of Appeals

noted in Anderson, while the Sentencing Commission has called on

Congress to modify the mandatory minima ratio, the Commission has

not taken its own step of modifying the Guidelines ratio.  Id. at

197, 82 F.3d at 441.  This is because the Commission adheres to

the view that a logical sentencing structure for cocaine offenses

requires the Guidelines and the federal statutes to incorporate

the same ratio.  Id.  Thus, if the ratio were ignored, a

defendant convicted of distributing 5 grams of crack cocaine

would nonetheless face a mandatory minimum sentence of five years

in prison (assuming no safety-valve eligibility, see 18 U.S.C. §

3553(f)), see 21 U.S.C. § 841(b)(1)(B)(iii), while a defendant

(with no record and assuming no adjustments) convicted of

distributing 4.9 grams of crack cocaine would face a Guidelines

range of imprisonment of only 10 to 16 months, with eligibility

to serve up to 5 months of the prison term through community

confinement and/or home detention.  See U.S.S.G. § 2D1.1(c)(14),

ch. 5 pt. A, § 5C1.1(d)(2).  By contrast, if the 100:1 ratio is

observed, the latter defendant in the example faces a Guideline

range of imprisonment of 51 to 63 months.  See id. § 2D1.1(c)(8),

ch. 5 pt. A.

     C.    Post-Booker, The Courts Have Overwhelmingly
Rejected Sentencing Crack Offenders To Sub-
Guidelines Sentences On The Basis Of The Disparity
With Cocaine Powder.

The defendant's sentencing memorandum correctly notes that

the First and Fourth Circuits have held that district courts may

not sentence below the advisory Guidelines range on the basis of

the crack/powder disparity.  See United States v. Eura, 440 F.3d

625 (4th Cir. 2006); United States v. Pho, 433 F.3d 53 (1st Cir.

2006).  However, the Court of Appeals for the Second Circuit has

reached the same conclusion, see United States v. Castillo, 460

F.3d 337, 361 (2d Cir. 2006), as have the courts of appeals for

the Seventh Circuit, see United States v. Jointer, 457 F.3d 682,

687 (7th Cir. 2006),[4] the Tenth, see United States v. McCullough,

___

[4]Defendant Johnson cites to United States v. Gipson, 425
F.3d 335 (7th Cir. 2005), for the proposition that in the Seventh
Circuit, district courts are not required to sentence below the
Guidelines range because of the crack/powder disparity.  In fact,
Gipson holds only that a district court's failure to depart
downward on that basis is not unreasonable.  425 F.3d at 337.  It
was left to another day, and ultimately to that court's decision
in Jointer, as to whether a district court may depart downward--
or impose a sentence below the advisory Guidelines range--in
order to ameliorate the disparity.

12

457 F.3d 1150, 1172 (10th Cir. 2006), and the Eleventh, <u>see</u>

<u>United States v. Williams</u>, 456 F.3d 1353, 1366-69 (11th Cir.

2006).[5]  In addition, the Court of Appeals for the Eighth Circuit

has "intimated" its agreement with this line of cases, while not

squarely reaching the issue as of yet.  <u>United States v. Brown</u>,

453 F.3d 1024, 1027 (8th Cir. 2006).  It appears that it is only

in the Third Circuit where the court of appeals has directly held

that the sentencing disparity between crack and powder cocaine is

a permissible basis for a district court to sentence below the

advisory Guidelines range.  See <u>United States v. Gunter</u>, 462 F.3d

237, 249 (3d Cir. 2006).

Moreover, while the defendant cites to an unpublished

opinion of Judge Robertson in this district, as well as the

sentencing practices of two other judges in this district, it is

also worth mentioning, to say the very least, that Judge Bates of

this district has issued a published opinion concurring with <u>Pho</u>

and its progeny.  <u>Doe</u>, 412 F. Supp. 2d at 94-97.  As Judge Bates

noted:

>  To hold that the Guidelines create an
>  unwarranted disparity between the sentences

---

[5]Thus, <u>Simon v. United States</u>, 361 F. Supp. 2d 35 (E.D.N.Y.
2005), and <u>United States v. Smith</u>, 359 F. Supp. 2d 771 (E.D. Wis.
2005), cited by the defendant as examples of the courts ignoring
the crack Guidelines due to the disparity with the powder
Guidelines, are no longer authoritative in the Second and Seventh
Circuits, respectively, after the 2006 decisions in <u>Castillo</u> and
<u>Jointer</u>.

for crack and those for powder cocaine, a
Court necessarily must conclude that
possession or distribution of crack cocaine
and possession or distribution of powder
cocaine are in fact similar when they involve
the same quantity of drug--a conclusion that
Congress unequivocally rejected when it set
the mandatory minimum sentences for crack and
powder cocaine offenses.

Id. at 94.

### Conclusion

The Court should decline to sentence below the advisory

range in the Sentencing Guidelines for crack cocaine in this

case, merely because of the disparity in the Guidelines between

crack and powder cocaine.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

/s/

by: _____

Michael C. Liebman
Assistant United States Attorney
D.C. Bar No. 479562
555 Fourth Street, N.W., room 4231
Washington, D.C.  20530
353-2385
michael.liebman@usdoj.gov