```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
```

**UNITED STATES OF AMERICA**     )
                                 )
        v.                       )  Crim. No. 06-37-EGS
                                 )
**JOHN C. JOHNSON**              )

Government's Second Supplemental Memorandum in Aid of Sentencing

      The United States of America, by and through the United States Attorney for the District of Columbia, and in compliance with the Court's order of February 14, 2007, submits this second supplemental memorandum in aid of sentencing, in order to address the affect of the recent decision in United States of America v. Pickett, No. 05-3179 (D.C. Cir., Feb. 13, 2007).

Background

      Defendant John C. Johnson has been charged in a four-count indictment with possession with intent to distribute 50 grams or more of cocaine base, also known as crack (count 1); possession with intent to distribute 50 grams or more of cocaine base, also known as crack, within 1000 feet of an elementary school (count 2); using and carrying a firearm during and in relation to a drug trafficking offense (count 3), and maintaining a premises for the use, manufacturing and distribution of cocaine base, also known as crack (count 4), all occurring on or about January 5, 2006.

      On June 29, 2006, defendant Johnson pled guilty to count 4, pursuant to a plea agreement which provided that the remaining counts would be dismissed at sentencing.  In the statement of

facts supporting the guilty plea, agreed to by the defendant and counsel, the defendant acknowledged that Metropolitan Police Department officers executed a search warrant at his home, on January 5, 2006, and recovered contraband in three separate locations.  Specifically, nine small ziplock bags containing cocaine base, also known as crack, were recovered in the living room, inside a pill bottle.  In the single bedroom of the apartment, the police recovered a razor blade and a plate.  And in the hallway officers discovered a black bag hidden behind a plumbing access door, which bag contained:  a large rock of crack cocaine; 74 additional small ziplocks containing crack cocaine; a digital scale; hundreds of empty small ziplock bags; a 9 mm semi-automatic handgun; a .380 caliber semi-automatic handgun; 35 rounds of 9 mm ammunition; and 35 rounds of .380 caliber ammunition.  The statement of facts and the plea agreement specifically provided that the defendant accepted responsibility for all of the crack cocaine recovered, including the crack stored alongside the firearms and ammunition, all totaling 58.24 grams.

When the warrant was executed, the defendant was alone inside the apartment, which was located at 2520 Tenth Street, N.E., Washington, D.C..[1]  He was immediately taken into custody.

---

[1] The apartment building is about two blocks away, and less than 2/10 mile, from Noyes Elementary School.  In January 2006, the school had approximately 300 children from pre-school age to

After his arrest, he waived his <u>Miranda</u> rights and gave a statement admitting that he knew about the drugs and the firearms stored in the apartment.

The violation to which the defendant pleaded guilty carries a maximum prison term of 20 years.  As accurately calculated by the Pre-sentence Report, based on the defendant's criminal responsibility for 58.24 grams of crack, he faces a Sentencing Guideline base offense level of 30, which takes into account a two-level downward adjustment from the offense level assigned based simply on the quantity of crack cocaine (level 32, under U.S.S.G. § 2D1.1©), pursuant to the Guideline "safety valve" adjustment in U.S.S.G. § 2D1.1(b)(9).  In calculating the adjusted offense level, the defendant gets an additional four levels off, pursuant to U.S.S.G. § 2D1.8(a)(2), because the defendant had no participation in manufacturing or distributing the crack cocaine.  Finally, assuming he continues to qualify, he gets an additional three-level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.[2]  All of which yields an adjusted offense level of 23.

The plea agreement allowed for the possibility that the government would seek a Guideline enhancement based on the

---

sixth grade.

   [2]As of this writing, the government has no reason to believe the defendant is not deserving of the full three-levels off for acceptance of responsibility.

defendant having also possessed the firearms and ammunition, which would have disqualified the defendant for the downward adjustment in § 2B1.9, and subjected him to a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(2), giving him an adjusted offense level of 27 (assuming full credit for acceptance of responsibility).  However, the government has elected not to argue that the defendant possessed the firearms and ammunition for purposes of the enhancement, notwithstanding the defendant's admission that he knew about the weapons and notwithstanding his acknowledgment of responsibility for the crack stored with the weapons.

Accordingly, the parties and the probation office are in agreement that the defendant's adjusted offense level (assuming full credit for acceptance of responsibility) is 23.  There is also no dispute that the defendant has a single criminal history point, putting him in Criminal History Category Level I.  With an offense level of 23 and CHC of I, the defendant faces a Sentencing Guideline term of imprisonment of 46 to 57 months.

The plea agreement specifically provides that the defendant cannot seek "any decreases" in his base offense level other than those discussed above.  Moreover, the agreement also prohibits the defendant from seeking a "downward departure for any reasons from the otherwise applicable guideline range established by the Sentencing Guidelines."  The agreement, however, does not

specifically prohibit the defendant from seeking a non-Guideline sentence, and the defendant, relying primarily on the sentencing disparity in the Guidelines for crack and cocaine powder offenses, is seeking a probationary sentence.  By contrast, the government is seeking a Guideline-consistent prison sentence of 46 months.

On February 14, 2007, the Court ordered the parties to submit supplemental sentencing memoranda on the effect of the Pickett decision, in which the Court of Appeals addressed the issue of the crack-powder sentencing disparity and the Sentencing Guidelines.

### The Pickett Decision

Lorenzo Pickett, after pleading guilty to distributing more than five grams of crack cocaine, in violation of 21 U.S.C. § 841, was sentenced to 121 months, the low end of the applicable range of imprisonment established by the Sentencing Guidelines. United States v. Pickett, 05-3179, slip op. at 2 (D.C. Cir., Feb. 13, 2007).  While not disputing that the guideline range of imprisonment was 121 to 151 months, Pickett had argued for a sentence below the range, in order to "take into account the unwarranted disparity between Guideline sentences based on the weight of crack as opposed to powder cocaine."  Id.  The sentencing judge refused to consider the issue, and Pickett appealed.  Id. at 2-3.

5

In its discussion of the issue, the Court of Appeals noted that since their inception in 1987, the Sentencing Guidelines have set a 100-to-1 ratio with respect to determining sentences for cocaine powder and crack offenses. Id. at 5-6. That ratio requires, for example, that a defendant convicted of distributing 50 grams of crack cocaine be treated under the Guidelines the same as a defendant convicted of distributing 5000 grams of cocaine powder. Id. In the period before United States v. Booker, 543 U.S. 220 (2005), when the Guidelines were mandatory, a court considering the sentence to be imposed for a crack cocaine violator, could not depart downward from the applicable Guideline range based on the disparity. Pickett, slip op. at 7. After Booker, the Guideline range became only one factor out of several for a court to consider when imposing a sentence. Id. at 8-9.

As the Pickett court held, 18 U.S.C. § 3553(a) sets out the factors that a sentencing court must consider in imposing sentence. Id. at 9-10. They are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed–
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>    (B) to afford adequate deterrence to criminal conduct;
>
>    (C) to protect the public from further crimes of the defendant; and
>
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
>
> (5) any pertinent policy statement issued by the Sentencing Commission . . . [;]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The court noted that neither the Supreme Court nor the statute has assigned any weight or ranking to these factors, and it was therefore unclear how much influence the Guideline range should have when sentencing a defendant. Pickett, slip op. at 12.  The court held, however, that it would not be proper for a sentencing judge simply to presume that a Guidelines sentence is the correct sentence.  Id.

Instead, a sentencing judge should "evaluate how well the applicable Guideline effectuates the purposes of sentencing

enumerated in § 3553(a)." Id. The purposes of sentencing, the court suggested, are contained within 18 U.S.C. § 3553(a), specifically at § 3553(a)(2). Slip op. at 9 & n.4; see also 18 U.S.C. § 3553(a) ("The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection.") (emphasis added).

The Pickett court then discussed how in the last 12 years the Sentencing Commission, with respect to the application of U.S.S.G. § 2D1.1 in crack cocaine cases, has been "one of its severest critics." Slip op. at 12. After quoting from the Commission's 2002 report to Congress on cocaine sentencing policy, the court concluded that the Sentencing Commission itself believes that this Guideline, at least with respect to crack distributors, "generates sentences that are greater than necessary, exaggerates the seriousness of the offense of crack trafficking, does not promote respect for the law and does not provide just punishment." Id. at 13-14. The court then concluded that Pickett's sentencing judge had erred "in refusing to evaluate whether sentencing Pickett in accordance with Guideline § 2D1.1, and its 100-to-1 ratio, would effectuate the purposes of sentencing set forth in § 3553(a)." Id. at 14 (internal quotation marks omitted).

### Application of the Pickett Decision

Pickett thus requires a sentencing judge to consider whether U.S.S.G. § 2D1.1's disparate treatment of crack cocaine and cocaine powder offenders effectuates the purposes of sentencing enumerated in 18 U.S.C. 3553(a)(2).  Significantly, notwithstanding Pickett's conclusion that the Commission believes the guideline to be inconsistent with the sentencing statute, the court of appeals did not hold that the guideline itself was issued in violation of the Sentencing Commission's enabling statute, 28 U.S.C. §§ 991-998, a key provision of which requires the Commission to establish sentencing policies and practices that "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2) of title 18, U.S. Code."  Id. § 991(b)(1)(A); see also id. § 994(g) ("The Commission, in promulgating guidelines . . . to meet the purposes of sentencing set forth in section 3553(a)(2) of title 18, United States Code . . . .").

Accordingly, it is not the case that in all circumstances a sentence for a crack cocaine violation consistent with § 2D1.1 will fail to effectuate the purposes of the sentencing statute.  And in this particular case, involving defendant Johnson, a sentence consistent with § 2D1.1 does effectuate the purposes of the statute, in particular the purposes of having a sentence reflect the seriousness of the offense, promote respect for the

law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by the defendant.

For instance, the defendant has argued that the crack cocaine sentencing guideline overstates the seriousness of the offense here because "weapons . . . are involved in smaller numbers [of crack cocaine violations] than previously imagined." Defendant's (Initial) Sentencing Memorandum at 15 (internal quotation marks omitted).  In this case, regardless of whether the defendant "possessed" the firearms and ammunition, there is no doubt firearms and ammunition were "involved" in this particular crack cocaine offense.

Moreover, in its criticism of the 100-to-1 ratio, the Sentencing Commission has noted that one justification for the ratio has been the purported higher use by young people of crack cocaine versus cocaine powder.  The Commission's response has been that, rather than address this factor through the quantity of drugs involved in the offense, it would be better simply to impose higher penalties for drug offenders who commit their offenses "in areas likely to be frequented by juveniles (e.g., playgrounds or schools)."  U.S. Sentencing Commission, Report to the Congress:  Cocaine and Federal Sentencing Policy at 97 (May 2002) (hereinafter "U.S.S.C. 2002 Report").

Once again, there is no risk in this that § 2D1.1 is assigning blame to the defendant for a problem associated with

crack cocaine violators generally as opposed to what he did. Here, of course, the defendant allowed a crack cocaine dealer to store crack cocaine, firearms and ammunition less than two blocks from an elementary school, thus demonstrating once again that application of the crack cocaine guideline to this defendant does effectuate the purposes of the sentencing statute.

<u>The Appropriate Sentence</u>

If the Court determines that application of the Guideline effectuates the purposes of § 3553(a), the question then becomes how do all of the factors of the sentencing statute interplay in this case to determine the appropriate sentence.  Although <u>Pickett</u> does not permit a sentencing judge to <u>presume</u> that a guideline sentence is the correct sentence, the opinion says nothing about the weight to be afforded the guideline sentence when applying all the factors in § 3553(a).  As the government argued in its first supplemental sentencing submission, the sentence determined by the guidelines is entitled to substantial deference by a sentencing judge.

In this case, the defendant has argued that his poor health, drug addiction, and minimal criminal record justify a sentence below the guideline sentence.  His criminal record, of course, is already directly factored into the guideline calculation.  In fact, the guidelines are treating this defendant no differently than a defendant with a spotless record, which his is not.  And

while poor health and drug addiction are reasons to be merciful, they are not sufficient reason to convert a 46- to 57-month prison term into a probationary sentence. The defendant can receive drug counseling while incarcerated, and he has made no credible claim that his other health concerns cannot be addressed by the Bureau of Prisons.

Finally, even the Sentencing Commission has conceded that there are reasons to punish crack cocaine offenses more severely than cocaine powder offenses. See U.S.S.C. 2002 Report, at 92. This defendant, however, wants to be treated no differently from someone who maintained premises for the manufacture and distribution of cocaine powder. But that was not his crime.

In sum, all of the factors argued by the defendant are reasons for the court not to impose a sentence anywhere near the statutory maximum (20 years in prison) but instead to impose a sentence at the low end of the applicable guideline range, i.e. a prison term of 46 months.

                        Respectfully submitted,

                        JEFFREY A. TAYLOR
                        United States Attorney

                              /s/
      by: _____
            Michael C. Liebman
            Assistant United States Attorney
            D.C. Bar No. 479562
            555 Fourth Street, N.W., room 4231
            Washington, D.C.  20530
            353-2385
            michael.liebman@usdoj.gov