UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Cr. No. 06-037 (EGS) |
| JOHN C. JOHNSON | : | |

## SECOND SUPPLEMENTAL SENTENCING MEMORANDUM

On June 29, 2006, Mr. John Johnson entered a plea of guilty to one count of unlawful maintenance of a premise to manufacture, distribute, store or use a controlled substance. The Court has continued the sentencing hearing in this matter on several occasions in order to give Mr. Johnson an opportunity to demonstrate that he can control his addiction and be a law-abiding member of the community. At a status hearing on December 12, 2007, the Court instructed counsel to file a supplemental sentencing memorandum regarding the opinions issued by the United States Supreme Court on December 10, 2007, in Kimbrough v. United States, 552 U.S. __, 128 S.Ct. 558, 564 (2007), and Gall v. United States, 552 U.S. __, 128 S.Ct. 586 (2007).

The Court's opinions in Kimbrough and Gall reaffirm the broad discretion of sentencing courts to evaluate the sentencing factors in 18 U.S.C. § 3553(a), and determine "that, in a particular case, a within Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing." Kimbrough, 128 S.Ct. at 564 (citing 18 U.S.C. § 3553(a)(2000 ed. and Supp. V)); Gall, 128 S.Ct. 586 (2007). Although the Court must use the sentencing Guidelines as a starting point, the court "may not presume that the guidelines range is reasonable." Gall, 128 S.Ct. at 596-97.

Rather than presume that a Guidelines sentence is the correct sentence, the Court must "evaluate how well the applicable Guideline effectuates the purposes of sentencing enumerated in § 3553(a)." United States v. Pickett, 475 F.3d 1347, 1353 (D.C. Cir. 2007). "One, but only one, of the factors sentencing courts must . . . consider is the sentencing range under the Guidelines, 18 U.S.C. § 3553(a)(4)(A)." Id. at 1352 (emphasis added).

Here, the applicable sentencing range under the Guidelines is 37 to 46 months (offense level 21, criminal history category I). A sentence in this range would be greater than necessary to serve the purposes of sentencing set forth in § 3553. See 18 U.S.C. § 3553(a) (Sentences must be "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]").

In Kimbrough, the Court found that sentencing courts have the discretion to disagree with the Sentencing Commission's policy judgements, including the drug quantity table set forth in U.S.S.G. § 2D1.1. See Kimbrough, 128 S.Ct. at 564 ("under Booker, the cocaine Guidelines, like all other Guidelines, are advisory only," thus, treating "the crack/powder disparity effectively mandatory" is error). The Court, "may determine … that, in a particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing" the individual defendant, by "consider[ing] the disparity between the Guidelines' treatment of crack and powder cocaine offenses." Kimbrough, 128 S.Ct. at 564.

Until November 1, 2007, the Guidelines included a 100-to-1 disparity between the sentencing ranges for crack cocaine and powder cocaine. The Sentencing Commission has repeatedly repudiated that disparity. The Commission has "concluded that the 100-to-1 powder to crack ratio fails to meet the objectives of sentencing because it rests on unsupported

assumptions about the relative harmfulness of the drugs, it punishes 'retail' crack dealers more harshly than 'wholesale' drug distributors, and it promotes an unwarranted disparity based on race." United States v. Regalado, 518 F.3d 143, 150 (2d Cir. 2008)(quoting Kimbrough, 128 S.Ct. at 568 (citing United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy 91-103 (May 2002))).

In Kimbrough, the district court took into account the "'disproportionate and unjust effect that crack cocaine guidelines have in sentencing,'" and imposed the mandatory minimum sentence on the crack conviction, which was well below the advisory guideline range, after contrasting the crack guidelines "with the range that would have applied had he been accountable for an equivalent amount of powder cocaine." Kimbrough, 128 S.ct. at 565. The Court upheld the sentence in Kimbrough, noting the "Sentencing Commission's consistent and emphatic position that the crack/powder disparity is at odds with § 3553(a)." Id. at 576. The Court stated that the crack guidelines "do not exemplify the Commission's exercise of its characteristic institutional role" because:

> the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses "greater than necessary" in light of the purposes of sentencing set forth in § 3553(a). . . . Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes, even in a mine-run case.

Id. at 575.

Prior to the Supreme Court's decision in Kimbrough, the District of Columbia Circuit recognized "that a district court, in sentencing a defendant, may properly take into account the fact that the 100-to-1 ratio embedded in the Sentencing Guidelines for crack-to-powdered

3

cocaine offenses bears no meaningful relationship to a defendant's culpability." United States v. Pickett, 475 F.3d 1347, 1356 (D.C. Cir. 2007) (Rogers, J., concurring).  In her concurring opinion, Judge Rogers commended the opinion, noting that the Commission had stated that the 100-to-1 ratio "was unfair and produced extreme sentencing anomalies, thereby failing to accomplish the purposes set forth in . . . § 3553(a)." Id. at 1356 (footnote omitted).  She concluded that failure to consider the problems associated with the crack guidelines

> would frustrate the overarching purpose of a sentencing scheme to impose just punishments reflecting the seriousness of an offense and be contrary to the sentencing factors that Congress established in § 3553(a)(2).

Id. at 1357 (footnote omitted).

It is important to note, moreover, that the Sentencing Commission itself acknowledges that the 2007 amended crack cocaine guidelines do not come close to solving the problem with the disparity:

> The Commission, however, views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio.  It is neither a permanent nor a complete solution to those problems.  Any comprehensive solution requires appropriate legislative action by Congress.  It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

Report to the Congress, Cocaine and Federal Sentencing Policy, (May 2007) ("2007 Report"). See also Kimbrough, 128 S.Ct. at 568-69 (noting that Commission concluded that powder/crack disparity fails to meet sentencing objective set forth by Congress and that Commission has described recent amendment as only partial remedy).

While the amended drug quantity table appears to have been adopted after the Commission had studied the matter more thoroughly than when it adopted the previous table, it

still incorporates widely disparate ratios. See Kimbrough, 128 S.Ct. at 573 ("as a result of the 2007 amendment, … the Guidelines now advance a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1"); see also U.S.S.G., Appendix C, Amdt. 706 ("Reason for Amendment") (Nov. 2007). It is difficult, if not impossible, to comprehend how the new crack/powder ratios "provide certainty and fairness" or how it "avoid[s] unwarranted sentencing disparities." See 28 U.S.C. § 911(b). Nor has the Commission provided any sort of empirical or experiential basis to justify varying the crack/powder ratio based on the amount of drugs involved in the offense. Rather, the new ratios are random, arbitrary, and without rational basis.[1] Adopting a partial remedy to a known problem is one thing, but adopting an irrational, partial remedy is quite another. When the Sentencing Commission promulgates a provision that is based on "unsound judgment," such as the arbitrary crack/powder ratios animating U.S.S.G. § 2D1.1's new drug quantity table, this Court may exercise its discretion to reject that provision of the Guidelines. See Rita v. United States, 127 S.Ct. at 2468.

The criticisms lodged against the 100-to-1 disparity continue to apply to the amended ranges. As several United States Senators have recognized:

> It is well-documented that the crack-powder disparity has a disproportionate impact on African-American defendants, their families, and their communities, and as a result has undermined public confidence in the criminal justice system. Such sentencing disparity is completely contrary to the goals of the Sentencing

---

[1] One might perceive a rational basis for progressively escalating the crack/powder ratio correlatively with the base offense level, but the new drug table does not do this. Instead, it varies the ratio without discernable rationale. For example, at base offense level 24, the ratio is 80:1, at base offense level 26, it is 25:1, and at base offense level 28, it is 57:1. Rather than reflect some empirical or experiential lesson that the Commission has learned, the fluctuating ratios seem to be simply a bi-product of the Commission's decision to lower the base offense levels for crack-related cases by two levels throughout the drug quantity table.

> Reform Act, and § 3553(a) enables courts to consider this impact as they develop principled rules on sentencing."

Report to the Congress, Cocaine and Federal Sentencing Policy, (May 2007) ("2007 Report") at 121 n.195 (quoting Brief of Amici Curiae Senators Edward M. Kennedy, Orrin G. Hatch, and Dianne Feinstein in Support of Respondents, at 28, filed in United States v. Claiborne, 439 F.3d 479 (8th Cir. 2006), cert. granted at 127 S.Ct. 551 (2006), cert. dismissed, 127 S.Ct. 2245 (2007) (per curiam)(because of defendant's death.)).

On November 14, 2006, at a public hearing on federal cocaine sentencing policy held by the Commission, Judge Reggie Walton testified on behalf of the Criminal Law Committee of the Judicial Conference. "Judge Walton stated his belief that the current sentencing structure is unconscionable." 2007 Report at B-1 (emphasis added). Judge Walton commented on the disparity:

> Judge Walton emphasized that not only must the punishment imposed be fair, it also must be perceived as fair. He noted that many believe that current sentencing differential is unfair to those at the lower end of the socioeconomic ladder and to people of color because they are disproportionately prosecuted for crack related trafficking offenses. In his opinion, the sentencing differential was not enacted with the conscious objective of targeting the poor and people of color, but the current state of affairs should cause the policy to be reexamined. Specifically, Judge Walton observed the tremendous increase in the number of inmates in federal prisons, noting that many, if not most, are comprised of people of color charged or convicted of crack cocaine distribution related offenses.
>
> Judge Walton also observed that the perception of unfairness has had a negative impact on the respect of many for our nation's criminal justice system. According to Judge Walton, some people do not wish to serve on juries when crack cocaine is involved because of the crack cocaine/powder cocaine sentencing disparity, and jurors at times have refused to convict crack cocaine offenders because of it. He added that some may be unwilling to come forward and cooperate with the government for similar reasons. In

> short, Judge Walton concluded that the failure to address the sentencing disparity has left many to believe that there is an indifference to its real and perceived unfairness because of the population it disproportionately impacts. He also noted that it has a negative impact on the credibility of the sentencing guidelines, in part because this is an area where a greater number of judges are imposing non-guideline sentences, some even novel in nature.

Id. at B-2. In a statement particularly apt to the present case, Judge Walton:

> pointed out the devastating impact long sentences have on the community. According to Judge Walton, most kids in many poor black communities do not have fathers because they are imprisoned for such long periods, and some of these offenders could be contributing members of society if they were not imprisoned for so long.

Id.

The amended guideline range applicable to Mr. Johnson continues to contain a significant unwarranted disparity. Here, because of the amount of crack cocaine included in Mr. Johnson's relevant conduct (58.24 grams), the amended guideline provides for a sentencing range of 37 to 46 months (offense level 21, criminal history category I). The same amount of powder cocaine would have resulted in a sentencing range of 0 to 6 months (offense level 8, criminal history category I). The application of such a disparity would be particularly inappropriate here, where the defendant did not sell any controlled substance, but permitted a drug dealer to use his apartment to store drugs in exchange for a small amount of crack cocaine for his own use. Indeed, "the Supreme Court in Kimbrough made clear that sentencing courts can consider the crack/powder disparity 'even in a mine-run case.'" United States v. Lee, No. 05-4124, 2008 WL 918724, at *4 (8th Cir. Apr. 7, 2008) (quoting Kimbrough, 128 S.Ct. at 575.).

Apart from the Guidelines all of the factors set forth in § 3553 support a finding that a sentence that does not involve a period of incarceration is appropriate. As set forth in more detail

in Mr. Johnson's Sentencing Memorandum and Supplemental Sentencing Memorandum, Mr. Johnson has no prior felony record and a long record of employment. He has been on pretrial release for more than two years, since March 21, 2006. During this time, he has struggled to gain control over his drug addiction. Because he is 53 years old and has been addicted to heroin and crack cocaine for more than 30 years, this has been very difficult. Currently, he is in the PIDARC methadone program and is doing well. In addition to struggling with his addiction, Mr. Johnson has numerous health issues including severe complications with his liver. Most recently, he was admitted to the Washington Hospital Center for depression.

In Gall, the Supreme Court specifically recognized post-offense rehabilitation as an appropriate consideration under § 3553. Gall, 128 S.Ct. at 602. As the Court noted, rehabilitation "lends strong support to the conclusion that imprisonment [is] not necessary to deter [the defendant] from engaging in future criminal conduct or to protect the public from his future criminal acts." Id. Despite the difficulties he has had as he has struggled to maintain control over his addiction, Mr. Johnson has made significant progress. A sentence of incarceration not only is unnecessary to fulfil the purposes of sentencing, but also could have a negative impact on the progress Mr. Johnson has made. Moreover, a sentence of probation or supervised release without any additional period of incarceration is a significant sentence. As the Supreme Court noted, while "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." Gall, 128 S.Ct. at 595.

**Conclusion**

For the foregoing reasons, the reasons submitted in Mr. Johnson's Sentencing Memorandum and Supplemental Sentencing Memorandum, and such other reasons as may be presented at the sentencing hearing, Mr. Johnson respectfully requests that the Court impose a sentence that does not include a period of incarceration.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004
(202) 208-7500